UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTINA ZAIMI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | CASE NO. 2:25-cv-01076-JHC<br><br>ORDER |

**I**

**INTRODUCTION**

This matter comes before the Court on Costco's Motion to Dismiss Complaint for Failure to State a Claim.  Dkt. # 6.  Plaintiff brings statutory and common-law claims related to price differences between items that Costco sells online and in-store.  Dkt. # 1.  Defendant seeks dismissal, contending that the complaint fails to state a claim upon which relief can be granted.  Dkt. # 6.  The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the applicable law.  The Court finds that it does not require oral argument to resolve the motion.  Being fully advised, for the reasons below, the Court DENIES the motion.

ORDER - 1

## II

### BACKGROUND

A.      Facts

These facts are alleged in the complaint.[1]  Defendant Costco, a Washington corporation, markets and sells products online at www.costco.com and in brick-and-mortar Costco stores. Dkt. # 1 ¶¶ 1, 8.  Defendant sells many products, including furniture like the couch that Plaintiff purchased on December 30, 2024, for $2,349.99.  *Id.* ¶¶ 5, 29.

Plaintiff contends that Defendant misrepresents the cost of shipping items to consumers on its website.  In her telling, Defendant "advertises that it does not charge for shipping certain items that it sells through its website (and which are also available in the store)," *id.* ¶ 18, but charges more for the same item bought online relative to its in-store price.  *Id.* ¶¶ 19–21.  For example, Plaintiff points to a "Sereen 6-piece Fabric Modular Sectional, Taupe" couch sold under the brand name "Aiden and Ivy," available for $2,099.99 when bought in a physical Costco store.  *Id.* ¶ 19.  The same couch costs $2,399.99 when purchased online, and at checkout, "Shipping & Handling" is listed as "$0.00."  *Id.* ¶¶ 20–21.  But within the online listing, in light grey font, Costco says that "Delivery, setup and packing removal [are] included," and that "Items may be available in your local warehouse, prices may vary."  *Id.* ¶ 20.  To Plaintiff, the higher price of the online listing shows that Defendant essentially adds the $300 shipping cost to the price of the item online while also promising free shipping, despite the "prices may vary" disclaimer.  Thus, Plaintiff contends, because "Costco promises that shipping will cost $0.00, reasonable consumers believe that they are not paying for shipping," but they are.  *Id.* ¶¶ 22–24.

---

[1] The factual background derives from the complaint, Dkt. # 1, which the Court accepts as true on a Rule 12(b)(6) motion to dismiss.  *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

ORDER - 2

Plaintiff says that she herself was misled this way.  On or about December 30, 2024, she bought the "Sereen 6-piece Fabric Modular Sectional, Light Brown" for $2,349.99 from Costco's website.  *Id.* ¶ 29.  For "Shipping," Costco charged "$0.00," and for "Estimated Tax," Costco charged "$223.23."  *Id.*  Plaintiff says that she "understood this to mean that she would not be charged anything for shipping, and that Defendant would absorb the cost of the item being shipped to her as a cost of doing business."  *Id.* ¶ 30.  But "in reality," Plaintiff laments, "Defendant charged [her] $250 for shipping," which she paid, because the same couch in-store cost $2099.99.  *Id.* ¶¶ 31–32 (attaching screenshot of couch listed for $2099.99 in a store on December 29, 2024, a day before Plaintiff's online purchase).  As Plaintiff puts it, "even though Defendant represented that [Plaintiff] was paying $0.00 to ship the sectional to her, in reality, she paid $250 for shipping."  *Id.* ¶ 34.

Defendant discloses the price difference on a web page separate from an online listing or the checkout screen.  *Id.* ¶ 35 ("Costco admits: 'Costco.com prices take into account shipping and handling fees not applicable to warehouse purchases.'"); *see also* Dkt. # 8 at 22 (Exhibit C, screenshot of Costco's "Price Adjustment - Costco.com Orders" web page stating the same).  Plaintiff says that this amounts to an admission that "Defendant affirmatively misrepresents that shipping is included for free."  *Id.*  And Plaintiff says that she "read and relied on Defendant's representations that she was getting free shipping," but that "she was not presented with, and did not read, the fine print on Defendant's customer service webpage admitting that those representations were false."  *Id.* ¶ 36.

B.    Procedural History

On June 10, 2026, Plaintiff filed the complaint.  *See* Dkt. # 1.  Plaintiff brings nine claims under various statutes and the common law.

ORDER - 3

Plaintiff brings claims under four statutes.  First, Plaintiff says that Defendant breached the Washington Consumer Protection Act (CPA), which prohibits unfair or deceptive acts or practices in commerce.  *Id.* ¶¶ 68–69 (citing RCW § 19.86.020).  Plaintiff says that the false promise of $0.00 shipping is both unfair and deceptive.  *Id.* ¶¶ 73, 76.  Second, Plaintiff says that the promise also violates California's False Advertising Law (FAL), Cal. Bus. & Profs. Code §§ 17500 *et seq.*, by advertising that customers do not have to pay for shipping while adding the shipping cost to the total price.  *Id.* ¶¶ 85–86.  Third, Plaintiff says that Defendant has violated California's Consumer Legal Remedies Act (CLRA) by making misrepresentations during its sale of products, including by promising free shipping.[2]  *Id.* ¶¶ 98–99 (citing Cal. Civ. Code §§ 1770(a)(5), (a)(9).  Fourth, Plaintiff contends that Defendant has violated California's Unfair Competition Law (UCL) by violating each of its three prongs: unlawful, fraudulent, and unfair conduct (*id.* ¶ 110): the complaint asserts that Defendant violated the unlawful prong by violating the FAL and the CLRA, the deceptive prong by misrepresenting that shipping would be free for certain online listings, and the unfair prong by falsely advertising free shipping.  *Id.* ¶¶ 111–12, 115.

Plaintiff also brings various common-law causes of action, including claims for breach of contract, breach of warranty, quasi-contract/unjust enrichment, and negligent and intentional misrepresentation.  First, Plaintiff says that a contract existed between her and Defendant, because when she "purchased and paid for certain items from Defendant's website, they accepted offers that Defendant made, and thus, a contract was formed."  *Id.* ¶ 38.  Thus, Plaintiff says that

---

[2] Plaintiff attached a CLRA venue declaration to the complaint setting out that she is a resident of California, that Defendant is a resident of Washington, and that she must sue in a Washington Court, Dkt. # 1-1 ¶¶ 2–3, as required by California law.  *See* Cal. Civ. Code § 1780(d) (requiring that CLRA actions be "commenced in the county in which the person against whom it is brought resides, has his or her principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred.").

ORDER - 4

Defendant breached the "contracts with Plaintiff and class members by failing to provide free shipping," since it "did not ship the Products for free as promised," rather it "bundled the cost of shipping into the cost of the Product." *Id.* ¶ 58. Second, Plaintiff says that these facts amount to a breach of express warranty, since Defendant "issued material, written warranties by advertising that the Products shipped at a cost of $0.00 to the customer," on which Plaintiff relied. *Id.* ¶¶ 62–63. Third, Plaintiff brings a quasi-contract and unjust enrichment cause of action in the alternative to her breach of contract claim, contending that the false and misleading advertising about free shipping induced her purchase, and so Defendant received a direct and unjust benefit at her expense. *Id.* ¶¶ 126–27. Last, Plaintiff says that Defendant falsely represented or omitted material facts about free shipping, intending that Plaintiff and other class members rely on the representations. *Id.* ¶ 132–35 (negligent misrepresentation cause of action); *id.* ¶ 141–44 (intentional misrepresentation cause of action). Plaintiff says that when Defendant made the representations, it either knew or should have known they were false, supporting claims for negligent and intentional misrepresentation. *See id.* ¶ 134 (negligent misrepresentation), *id.* ¶ 143 (intentional misrepresentation).

Defendant now moves to dismiss the complaint, contending that it fails to state a claim upon which relief may be granted. Dkt. # 37.

### III
#### DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

ORDER - 5

*Twombly*, 550 U.S. at 556). Dismissal is proper only if the plaintiff has not alleged a "cognizable legal theory" or there is an "absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd.*, 416 F.3d at 946. The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). But a "'court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008). (quoting *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)).

The Court now turns to each of Plaintiff's causes of action and Defendant's arguments for dismissal, considering first the statutory claims and then the common-law claims.

A.    Statutory Claims

Defendant challenges the sufficiency of Plaintiff's allegations pertaining to her statutory claims on three grounds: it says that (1) the allegations do not make out a claim under any of the four statutes under the "reasonable consumer" test; (2) with respect to Plaintiff's UCL and CPA claims, they do not show any unfair conduct; and (3) with respect to Plaintiff's CPA claim alone, they do not properly show injury. *See* Dkt. # 6 at 18–24. Defendant does not challenge the sufficiency of the complaint about these causes of action on any other grounds.

The UCL prohibits business practices that are "unlawful, unfair or fraudulent," Cal. Bus. & Prof. Code § 17200, the FAL prohibits the dissemination of any advertising "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500, and the CLRA declares unlawful certain acts

and practices in the sale of goods or services.  Cal. Civ. Code § 1770.  Courts "often analyze these statutes together because they share similar attributes."[3]  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014) (collecting cases), *order corrected*, 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014).  Under all three statutes, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]."  *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *see also Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007) ("[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides") (citation modified).

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"[4]  RCW § 19.86.020.  To establish that an act was unfair or deceptive, a plaintiff must show that "the alleged act had the capacity to deceive a substantial portion of the public."  *Hangman Ridge*, 105 Wash. 2d at 785.  And

---

[3] "Each prong of the UCL is a separate and distinct theory of liability[.]"  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  "The unlawful prong borrows violations of other laws and treats them as independently actionable under the UCL," and so to make out a claim under the unlawful prong of the UCL, a plaintiff must allege facts making out a violation of some other law.  *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs. & Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1220 (C.D. Cal. 2011) (citing *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383, 826 P.2d 730 (1992)).

To demonstrate a claim under the FAL, a plaintiff must show that they suffered an economic injury "by relying on a misrepresentation" in an advertisement.  *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (citation omitted).

To establish a claim under the CLRA, a plaintiff must show that they "acted in reliance on the alleged misrepresentation" by the defendant and suffered damages as a result.  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002–03 (N.D. Cal. 2009).

[4] To show a claim under the CPA, a plaintiff must establish five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986).  Defendant makes no argument on the second, third, or fifth elements.

ORDER - 7

"[w]hether a deceptive act has the capacity to deceive a substantial portion of the public is a question of fact." *Behnke v. Ahrens*, 172 Wash. App. 281, 292, 294 P.3d 729 (2012) (citing *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wash. App. 210, 226–27, 135 P.3d 499 (2006), *review denied*, 160 Wash.2d 1019, 163 P.3d 793 (2007)).  As a sister court in this Circuit has put it, "[t]he contours of liability under Washington's CPA are similar to those under [the UCL]." *Nuvasive, Inc. v. Cadwell Indus., Inc.*, 2013 WL 12096625, at *5 (S.D. Cal. Nov. 4, 2013).

Both parties agree that the "reasonable consumer" test applies to all four of the statutory claims and devote most of their briefing to the question.[5] *See Dawson v. Better Booch, LLC*, 716 F. Supp. 3d 949, 956 (S.D. Cal. 2024) ("[t]he CLRA, FAL, and UCL are governed by the 'reasonable consumer' test.") (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)); *see Panag*, 166 Wash. 2d at 49–50 (applying reasonable consumer test to determine whether a practice is deceptive under the CPA).  "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777–78 (9th Cir. 2024) (citing *Ebner*, 838 F.3d at 965).  Thus, the Court first addresses whether a reasonable consumer could be deceived by Defendant's conduct in its pricing.

1.      Reasonable consumer analysis

Defendant argues that, for two reasons, no reasonable consumer could be deceived by the $0.00 shipping statement on an online listing.  First, pointing to allegations in the complaint, Defendant says that it discloses the price differences and shipping costs online.  On the online

---

[5] *See* Dkt. # 6 at 19 (Defendant's brief); *see* Dkt. # 22 at 6 (Plaintiff's brief).

ORDER - 8

listing, it states that "[d]elivery, setup, and packaging removal included" in the stated price, Dkt. # 6 at 19 (citing Dkt. # 1 ¶ 20), and elsewhere on the website, Defendant discloses that items are cheaper if bought in-store. *Id.* (citing Dkt. # 1 ¶ 35). Second, Defendant says that Plaintiff's "supposed belief that she would pay the same for the couch online as in the warehouse *and* pay nothing to have it delivered is patently unreasonable. No ***reasonable*** consumer would believe that in light of the website statements." *Id.* at 20.

Plaintiff responds that Defendant's statement on the checkout page that says, "Shipping & Handling $0.00" induces reasonable consumers into believing they are paying $0.00 for shipping, and that adding the shipping cost into the online price thus deceives consumers into thinking that they are not paying for shipping. *See* Dkt. # 22 at 7–8 (citing Dkt. # 1 ¶¶ 3, 21). In short, Plaintiff argues that Defendant "misrepresents the shipping fee as '$0.00' when in fact consumers are paying a substantial amount for shipping," which is "plausibly deceptive." *Id.* at 9. Plaintiff also argues that Defendant's price disclaimers (that items are available at a lower price in its warehouses) do not "negate the clear message that 'Shipping & Handling $0.00' conveys to reasonable consumers" and thus do not cure the deception here. *Id.* at 10.

Neither side presents case law on all fours with this matter. The cases furnished by Plaintiff concern relatively small-dollar purchases, like fast-food delivery[6] or "shipping insurance" valued between $1.18 and $3.12.[7] And a case alleging similar facts and the same

---

[6] Dkt. # 8 at 117–19 (reproducing an order in *Aseltine v. Panera, Inc.*, No. RG21098794 (Cal. Super. Ct. Nov. 29, 2022, overruling demurrer regarding undisclosed markup of food purchased for delivery)); *id.* at 121–30 (reproducing an order in *Ross v. Panda Rest. Grp.*, No. 21STCV03662 (Cal. Super. Ct. Nov. 3, 2021, overruling demurrer since the defendant represented to consumers that a delivery fee was $2.95 while charging a higher price for delivery); *City of Chicago v. DoorDash, Inc.*, 2022 WL 704837, at *3 (N.D. Ill. Mar. 9, 2022) (denying motion to dismiss because the plaintiffs plausibly alleged that the defendant's menu prices were inflated above the menu prices offered by the restaurants on their own websites without disclosing as much to consumers). None of these opinions bind this Court.

[7] *Ramos v. EyeBuyDirect, Inc.*, 2025 WL 2633103, at *10 (C.D. Cal. Aug. 27, 2025), *reconsideration denied*, 2025 WL 3691699 (C.D. Cal. Oct. 21, 2025) (denying motion to dismiss because

ORDER - 9

Defendant (inflated online prices compared to in-store prices and no or low-cost shipping) was remanded to state court because it did not satisfy the amount-in-controversy requirement. *See Scoggan v. Costco Wholesale Corp.*, 2025 WL 3238184, at *2 (C.D. Cal. Nov. 19, 2025) (rejecting Costco's arguments that amount-in-controversy requirement is satisfied by the plaintiff's allegation that he sought to recover "at least $3 for *every* online order exceeding $75," about five million online orders). And the brief opinion in *Song v. Costco*, issued by a judge on King County Superior Court, presents little reasoning that could inform the Court. *See* Dkt. # 8 at 142–44.

Viewing the allegations in the light most favorable to Plaintiff, it is plausible that a reasonable consumer could be misled, since Costco affirmatively states that "Shipping & Handling" is "$0.00," despite the listing's statement in light grey font that "Delivery, setup and packing removal [are] included." At its quiddity, through the forgiving lens of Rule 12(b)(6), the theory is simple: a reasonable plaintiff could read that shipping and handling is free, believe that to be true, and be induced into purchase based on that belief. The online listing does not state that the prices will be lower in-store: It states that the "prices may vary." Dkt. # 1 ¶ 20. And the online disclaimers do not necessarily cure the deception. For example, one web page says only that "products sold online may have different pricing than the same products sold at your local warehouse." Dkt. # 8 at 18 (Exhibit B; Costco customer service web page titled "Are warehouse and online prices the same?"). Plaintiff's theory is bolstered by their allegation, which the Court accepts as true at this stage, that consumers "expect free shipping," given the ubiquity of online shopping, even for large purchases like furniture. *See* Dkt. # 1 ¶ 13–17.

---

"a reasonable consumer would not have been aware that 'Shipping Insurance' is optional, and would have been confused by the use of the terms 'Shipping Insurance' versus 'Shipping Protection'").

ORDER - 10

Defendant's cases are also not exactly on point.  In *Ebner*, the Ninth Circuit affirmed a dismissal of UCL, FAL, and CLRA claims alleging that a lip balm manufacturer misled consumers as to the amount of lip balm in a tube.  838 F.3d at 965–66.  Since the consumer could physically see the remaining lip balm product in the tube even though, by the design of the tube, that product could not actually be extracted from the tube without using a fingernail or other tool, there was no deception in the amount of product in the tube.  *Id.*  Defendant's other two cases are essentially labeling cases about food products and are also not on-point.  *See Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (affirming dismissal of UCL, FAL, CLRA claims because "no reasonable consumer would assume that Diet Dr. Pepper's use of the term 'diet' promises weight loss or management"); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (affirming dismissal because "reasonable consumers would necessarily require more information before they could reasonably conclude Trader Joe's label promised a honey that was 100% derived from a single, floral source.")

When "the reasonable consumer test applies to a plaintiff's underlying claims, it is a "rare situation in which granting a motion to dismiss is appropriate." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017) (citing *Williams*, 552 F.3d at 939).  With respect to Plaintiff's California claims, then, the Court concludes that Plaintiff has sufficiently alleged facts suggesting that reasonable consumers could be deceived, prohibiting dismissal of the FAL and CLRA claims and the UCL claim (under the deception theory of liability).  And to survive dismissal on a UCL claim, it is sufficient for Plaintiff to establish a violation of only one of the prongs. *See Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1120 (N.D. Cal. 2013) ("[t]o establish a violation of the UCL, a plaintiff may establish a violation under any one of these prongs," denying motion to dismiss).  In any event, because the Court concludes that Plaintiff has sufficiently alleged a violation of the FAL and CRLA, the Court rules that Plaintiff

ORDER - 11

has also stated a claim under the UCL via its unlawful prong.  Thus, the Court must deny Defendant's motion to dismiss with respect to Plaintiff's claim under all three California statutes.

As for the CPA claim,  the Court concludes that the complaint contains sufficient allegations from which one may infer that the free shipping promise had "the capacity to deceive a substantial portion of the public." *Behnke*, 172 Wash. App. at 292.  Accordingly, it need not reach the parties' contentions regarding the unfairness prong: To establish an "unfair or deceptive act or practice" element of the CPA, a plaintiff need not show that an action is both unfair and deceptive because the "'or' between 'unfair' and 'deceptive' is disjunctive." *Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 786, 295 P.3d 1179 (2013).  In other words, a plaintiff can show either or both to establish the first element of a CPA violation, and Plaintiff's allegations point to the latter.

2.    Injury under CPA

Defendant makes a final challenge[8] to Plaintiff's CPA claim on the ground she fails to show injury.  *See Hangman Ridge*, 105 Wash. 2d at 780 ("a plaintiff must establish . . . injury to the plaintiff in his or her business or property").  Defendant contends that Plaintiff cannot show injury because her allegations "show that she received 'the value that she paid for.'"  Dkt. # 6 at 23–24 (citing *Montes v. Sparc Grp., LLC*, 2023 WL 4140836, at *2–3 (E.D. Wash. June 22, 2023) (dismissing CPA claim "for failure to plead a cognizable injury" because the plaintiff's allegations failed to show that she "did not receive the value that she paid for")).[9]  Plaintiff

---

[8] *See* above at n. 7.

[9] *Montes* certified a question to the Washington Supreme Court, which recently concluded that a "consumer does not suffer an injury in 'her business or property' when she purchases—and obtains and keeps—the fungible product she sought to obtain but does so because the seller misrepresented the product's price history." *Montes v. SPARC Grp. LLC*, 2026 WL 900481, at *1, __ P.3d __ (Wash. Sup. Ct. Apr. 2, 2026).  But here, Plaintiff alleges that "the product she received was . . . less valuable than what was advertised," which "allege[s] economic loss." *Id.* (citation omitted); *see also* Dkt. # 22 at 20 (Plaintiff's brief stating that she "alleges that she paid $2,349.99, expecting to get a couch worth $2,349.99 with free shipping, and instead received a couch worth $2,099.99." (citing Dkt. # 1 ¶¶ 29–36)).

ORDER - 12

responds that Costco's deceptive conduct induced her into buying the couch when she otherwise would not have, which suffices to show injury under the CPA.  *See* Dkt. # 22 at 18–19; *see also* Dkt. # 1 ¶ 36 (Plaintiff "would not have made the online purchase if she had known that she was paying for shipping or that Defendant charged more for the product online.").

Plaintiff's argument prevails because "[i]nducing a plaintiff into spending money she otherwise would not have spent, based on a misrepresentation, is clearly a cognizable injury" under the CPA.  *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1061 (W.D. Wash. 2020); *cf. Williams v. Lifestyle Lift Holdings, Inc.*, 175 Wash. App. 62, 72, 302 P.3d 523 (2013) (reversing summary judgment on the plaintiff's CPA claim because plaintiff showed injury by showing that "she would not have given her money to [the defendant] but for their" deceptive "advertising and marketing") (quotation marks omitted).  Plaintiff alleges that she "would not have made the online purchase if she had known that she was paying for shipping or that Defendant charged more for the product online."  Dkt. #1 ¶ 36.  This suffices to show injury under the CPA.

B.      Common-Law Claims

Plaintiff claims breach of contract, breach of warranty, intentional and negligent misrepresentation, and quasi-contract/unjust enrichment.  Each of these claims is rooted in the same theory underpinning the statutory claims: that Defendant represented that Plaintiff and other buyers were receiving free shipping while charging for it.  Defendant raises several grounds against these claims.

1.      Choice of law

Defendant challenges the sufficiency of all of Plaintiff's common law causes of action on the ground that she fails to specify which state's laws apply to those claims.  *See* Dkt. # 6 at 26.

ORDER - 13

Plaintiff responds that her claims survive under both California and Washington law, and so, at the pleadings stage, the Court need not decide which law applies.  *See* Dkt. # 22 at 21.

The parties marshal contradictory authority on this point.  *See, e.g.*, Dkt. # 6 at 26 (Defendant's motion, citing *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) ("[i]n order for the Court to determine whether a claim has been adequately pled, [the p]laintiffs must allege the applicable law.  [The p]laintiffs' failure to identify which state laws govern their common law claims means the claims brought on behalf of the nationwide class have not been adequately pled.")); Dkt # 22 at 21 (Plaintiff's response brief, citing *PTP OneClick, LLC v. Avalara, Inc.*, 413 F. Supp. 3d 1050, 1065 (W.D. Wash. 2019) ("[t]he court need not decide the choice of law issue at this juncture because, as discussed below, irrespective of which statute of limitations applies, PTP's breach of contract claim is not subject to dismissal on statute of limitations grounds.")).

For two reasons, the complaint's failure to specify which of California's or Washington's common law applies does not warrant dismissal.  First, the pleading rules do not mandate that plaintiffs specify the state law framework for their claims.  A "properly pleaded claim in federal court need not specify under which law it arises.  A complaint need only set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ghebreselassie v. Coleman Sec. Serv.*, 829 F.2d 892, 895 (9th Cir. 1987) (citing Fed. R. Civ. P. 8(a)(2)).  Accordingly, the Ninth Circuit has generally held that complaints do not need to "identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss."[10] *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008); *see also Haddock v. Bd. of Dental Exam'r's of Cal.*, 777 F.2d 462, 464 (9th Cir. 1985) ("a complaint should not be dismissed if it states a

---

[10] Though *Alvarez* refers to the "statutory or constitutional source of the claim raised," nothing in its reasoning prevents its application to claims arising from the common law.

ORDER - 14

claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory.").

Put differently, a complaint need only "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, as Plaintiff points out, for the reasons explained below, she states claims under both California and Washington law—or at least, the claims survive Defendant's motion—so Defendant can "defend itself effectively." *Id.* Thus, assuming *Augustine* was properly decided, Plaintiff's claims still survive, because her claims are adequately pleaded under both state's laws. *See* 386 F. Supp. 3d at 1333.

2.      Breach of contract

"To plead a breach of contract claim under Washington law, a plaintiff must allege 'that a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged.'" *Univ. Ins., LLC v. Allstate Ins. Co.*, 564 F. Supp. 3d 934, 938 (W.D. Wash. 2021) (citing *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wash. App. 455, 467 (2017)). The standard is "essentially the same" in California. *See Corner Computing Sols. v. Google LLC*, 750 F. Supp. 3d 1208, 1214 (W.D. Wash. 2024) (citing *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171 (2008) and *Univ. of Wash*, 200 Wash. App. at 467).

Defendant argues that the breach of contract claim fails because Defendant did not make the promise (i.e., free shipping) that Plaintiff says it breached. Dkt. # 6 at 28–29. In Defendant's words, "'free shipping' was not a term of the purported 'contract' for the couch." *Id.* at 29 (citation omitted). Plaintiff responds that the free shipping advertisement amounts to a contractual term. *See* Dkt. # 22 at 23.

Whether the parties agreed to a contract and its terms—that is, whether there was "mutual assent or a meeting of the minds"—is a "question of fact." *Sea-Van Invs. Assocs. v. Hamilton*, 125 Wash. 2d 120, 126, 881 P.2d 1035 (1994); *see also Flannery v. Prentice*, 26 Cal. 4th 572,

ORDER - 15

590, 28 P.3d 860 (2001) ("Whether an enforceable agreement exists, or what its terms may be in any given case, are of course questions of fact.").  At the motion-to-dismiss stage, the Court must accept as true well-pleaded factual allegations.  *See Wyler Summit P'ship*, 135 F.3d at 661.  Plaintiff pleaded in the complaint that the free shipping was a contractual term.  *See* Dkt. # 1 ¶ 55 ("The contracts further required that Costco ship the purchased Products to Plaintiff and putative class members for free, i.e., that it would not charge Plaintiff and putative class members to ship Products to them.").  And because the free shipping term on the online listing can also be thought of as functionally an advertisement of a price term, it can amount to an offer as part of a contract.  *See Authentify Pat. Co., LLC v. StrikeForce Techs., Inc.*, 39 F. Supp. 3d 1135, 1146 (W.D. Wash. 2014) ("A solicitation may be considered an offer to sell where it contains features such as price quotations and terms, which could 'make it into a binding contract by simple acceptance.'") (citing *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005)).  The online listing for the couch, which included the free shipping statement, contained other essential terms of a contract for the sale of goods, such as the price of the couch and the terms of delivery.[11]

Given the foregoing, Plaintiff has pleaded that Defendant promised free shipping, sufficient to sustain her breach of contract claim.  *See* Dkt. # 1 ¶ 55–56.  While it may not be the case that the parties agreed on free shipping, as reasoned above, this is a factual question not appropriate for resolution at the motion-to-dismiss stage.  *Cf. Railey v. Pentagon Fed. Credit Union*, 2024 WL 3059343, at *9 (C.D. Cal. May 9, 2024) ("The parties dispute what terms the

---

[11] In Washington, a "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."  RCW 62A.2-204.  And the "essential elements of a contract are 'the subject matter of the contract, the parties, the promise, the terms and conditions, and (in some but not all jurisdictions) the price or consideration.'" *DePhillips v. Zolt Const. Co.*, 136 Wash. 2d 26, 31, 959 P.2d 1104 (1998) (citing *Family Med. Bldg., Inc. v. Dep't of Soc. & Health Servs.*, 104 Wash. 2d 105, 108, 702 P.2d 459 (1985)).  Plaintiff alleges all such elements in the complaint.  *See, e.g.*, Dkt. # 1 ¶ 38.

ORDER - 16

contract contains—this is a question of fact and is not appropriate for a 12(b)(6) motion to dismiss.")

Defendant's only other challenge, outside the choice of law issue, is that the reasonable consumer test also applies to the breach of contract claim, under which it says Plaintiff fails to state a claim. *See* Dkt. # 6 at 25 (citing *Elliott v. Conagra Brands, Inc.*, 2024 WL 3275567, at *3 n.4 (E.D. Cal. July 1, 2024) (dismissing breach claim, noting that "courts in this Circuit frequently determine, as a matter of law, that a reasonable consumer is not likely to be misled by contract language. In other words, when the label is truthful, there is no breach.")). But as explained above, Plaintiff's claims survive under the reasonable consumer test.

### 2.    Breach of express warranty

Defendant raises two legal arguments in seeking dismissal of the breach of express warranty claim. Defendant contends that the independent duty doctrine (also known as the economic loss doctrine) mandates dismissal. Dkt. # 6 at 30–31. Defendant also argues that any warranty about free shipping would not be a representation about the couch itself but its price, precluding a warranty claim. Dkt. # 6 at 29–30. The Court considers each in turn.

#### a.    Independent duty and economic loss doctrines

*Washington law*. "Under the independent duty doctrine, '[a]n injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract.'" *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wash. 2d 84, 92, 312 P.3d 620 (2013) (citing *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash. 2d 380, 389, 241 P.3d 1256 (2010)). Stated conversely, the independent duty doctrine "bars recovery in tort for economic losses suffered by parties to a contract unless the breaching party owed a duty in tort independent of the contract." *Pointe at Westport Harbor Homeowners' Ass'n v. Eng'rs Nw., Inc., P.S.*, 193 Wash. App. 695, 702–03, 376 P.3d 1158 (2016) (citing *Eastwood*, 170 Wash. 2d at 393–94). But the

ORDER - 17

doctrine "is applicable only when the terms of the contract are established by the record. If a contract term (such as a term defining the scope of the parties' contractual duties) is ambiguous, the trial court must ascertain the intent of the parties." *Donatelli*, 179 Wash. 2d at 92 (citing *Berg v. Hudesman*, 115 Wash. 657, 663, 801 P.2d 222 (1990)).

Here, for three reasons, the independent duty doctrine does not apply. First, a "cause of action for breach of warranty may sound in contract or tort. If the 'loss arises from expectations created by agreement,' the claim sounds in contract." *Stepp v. Takeuchi Mfg Co (U.S.) Ltd.*, 2008 WL 4460268, at *10 (W.D. Wash. Oct. 2, 2008) (citing *Hofstee v. Dow*, 109 Wash. App. 537, 544, 36 P.3d 1073 (2001)). Here, the breach of express warranty claim sounds in contract and not in tort, precluding application of the independent duty doctrine.

Second, when it is unclear if—as Plaintiff alleges, but Defendant denies—Defendant had a contractual duty to ship the couch for free, the independent duty doctrine does not apply. *See id.* Washington courts have rejected its application when contractual terms are ambiguous or undetermined at the time of a motion invoking it. *See, e.g.*, *Aviation Tech. Servs., Inc. v. Airframe Recovery Modification Int'l, LLC*, 2023 WL 4494197, at *5 (W.D. Wash. June 23, 2023), *report and recommendation adopted*, 2023 WL 4492368 (W.D. Wash. July 12, 2023) (denying application of independent duty doctrine "because the scope of the parties' contractual duties is in dispute," denying summary judgment); *Colvin v. Young*, 180 Wash. App. 1028 (2014) ("the record on appeal is inadequate to apply the independent duty doctrine" because the record did "not include the" contract at issue, "at most, only a portion of the contract"); *Robinett v. Opus Bank*, 987 F. Supp. 2d 1099, 1103 (W.D. Wash. 2013) (rejecting application of independent duty doctrine because, since no contract existed between the parties, "no analysis is possible (or necessary) to determine whether a duty arose independently of that contract.").

ORDER - 18

Third, the Washington Supreme Court "has limited the application of the independent duty doctrine to a 'narrow class of cases . . . claims arising out of construction on real property and real property sales.'" *Donatelli*, 179 Wash.2d at 92 (citing *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wash. 2d 157, 165, 273 P.3d 965 (2012)).[12] This action, of course, is not a real estate case. *Cf. Certain Underwriters at Lloyd's v. Expeditors Int'l of Wash., Inc.*, 584 F. Supp. 3d 860, 877 (C.D. Cal. 2022) (rejecting application of independent duty doctrine because the case was "not a real estate case" but an insurance coverage dispute).

*California law*. In California, the broadly equivalent "economic loss rule limits a party to a contract 'to recover[ing] in contract for purely economic loss due to disappointed expectations,' rather than in tort, 'unless he can demonstrate harm above and beyond a broken contractual promise.'" *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021), *certified question answered*, 17 Cal. 5th 1, 553 P.3d 1213 (2024) (citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 102 P.3d 268 (2004)). "Stated differently, a party to a contract generally cannot recover for pure economic loss—*i.e.*, damages that are solely monetary—that resulted from a breach of contract unless he can show a violation of some independent duty arising in tort." *Id.* (citation omitted). But unlike in Washington, there does not appear to be any rule in California barring its application when the terms of the contract are disputed, as here.

Breach of warranty claims in California sound in contract rather than in tort. *See Reyes v. Beneficial State Bank*, 76 Cal. App. 5th 596, 619 (2022) ("Claims for breach of an express

---

[12] Before *Donatelli*, the Washington Supreme Court apparently applied the independent duty doctrine outside the real property context in *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wash. 2d 442, 451–461 (extensively analyzing whether engineering contractor had an independent duty in a tort case) (2010). But given that the independent duty doctrine does not apply because of the ambiguity of the factual scope of Defendant's contract obligations, the Court need not resolve the tension between *Donatelli* and *Affiliated FM Insurance Co.*

ORDER - 19

warranty are based on the parties' agreement and sound in contract.").[13]  It follows that under California law, the economic loss doctrine does not apply to Plaintiff's breach of warranty claim. *See Braun v. Agri-Sys.*, 2006 WL 1328258, at *10 (E.D. Cal. May 16, 2006) ("Other California appellate courts have recognized the economic loss rule . . . does not bar recovery for the same damages under breach of warranty theory.") (citing *Hicks v. Kauffman & Broad Home Corp.*, 89 Cal. App. 4th 908, 918 (2001)).

        b.     Merits

Defendant argues that Plaintiff's express warranty claim must be dismissed because any promise related to the cost of shipping is not "a representation about the couch itself."  Dkt. # 6 at 29.  Rather, it is "a representation about the couch's *price*" which "cannot as a matter of law create a warranty."  *Id.* at 30.

In Washington and California, "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  RCW 62A.2-313(1)(a); Cal. Comm. Code § 2313(1)(a) (same).

Defendant offers cases concluding that express warranties cannot cover terms unrelated to the actual good itself, which would include a term related to its price.  Dkt. # 6 at 29–30 (citing *Newport v. Dell Inc.*, 2009 WL 1636248, at *13–14 (D. Ariz. June 8, 2009) (determining that the plain language reading of Arizona's equivalent express warranty provision meant that such warranties cannot cover price terms separate from the good itself (citing A.R.S. § 47-2313(B))); *Dreamscapes Landscape & Design, LLC v. Bell's Mach. Shop Ltd.*, 588 F. Supp. 3d

---

[13] Defendant's citation to *Apollo Group* is inapt, since that case considered a "common law" warranty under Arizona law (apparently a kind of implied warranty), not an express warranty under California law.  *See Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 481 (9th Cir. 1995) ("common law" warranty claim's "origin is non-contractual," applying caselaw discussing implied warranties).

ORDER - 20

1157, 1164 (W.D. Wash. 2022) (promise to ship goods within certain time not an express warranty). But Plaintiff cites authority concluding the opposite. *See* Dkt. # 22 at 24 (citing *Munning v. Gap, Inc.*, 2016 WL 6393550, at *8 (N.D. Cal. Oct. 28, 2016) ("an advertised discounted price can constitute an express warranty") (citing *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 887 (9th Cir. 1991), and *Karim v. Hewlett-Packard Co.*, 2014 WL 555934, at *6 (Feb. 10, 2014)); *Nabiyev v. Closet World, Inc.*, 2023 WL 7927739, at *8 (C.D. Cal. Nov. 16, 2023) (concluding that the plaintiffs stated a claim for breach of express warranty by alleging that the defendants "did not fulfill their promise to provide Plaintiffs with a discounted price, as advertised.") (citation omitted)).

The Court is persuaded by Plaintiff's position. The complaint alleges that Defendant created an express warranty by advertising the couch as shipping for free. *See, e.g.*, Dkt. # 1 ¶ 38 ("Each offer included an express promise that Defendant would provide free shipping on the order. . . . This promise was a specific affirmation of fact and a material part of the bargain."); *id.* ¶ 40 (alleging that the same amounts to breach of warranty) *see also id.* ¶ 62–63 (describing Defendant's affirmation and Plaintiff's reliance on it). First, the promise of free shipping "relates to" the couch sold by Defendants and was offered as "part of the basis of the bargain." RCW 62A.2-313(1)(a); Cal. Comm. Code. § 2313(2) (same); *cf. Munning*, 2016 WL 6393550, at *8 (discounted price term can be an express warranty); *Nabiyev*, 2023 WL 7927739, at *8 (same). Second, "[w]hether the seller's representations formed part of the basis of the parties' bargain is a question of fact." *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997). Thus, on Plaintiff's allegations, a jury could "conclude[] that" the online listing for the couch, including the free shipping statement, "constituted a statement of fact" and "that this statement became part of the basis of the bargain." *Pau*, 928 F.2d at 887 (citation omitted). Thus, Plaintiff has stated a claim for breach of express warranty covering the free shipping

promise.[14] *Cf. Water and Sanitation Health, Inc. v. Dole Food Co., Inc.*, 2012 WL 13028545, at *2 (W.D. Wash. July 31, 2012) (denying motion to dismiss breach of express warranty claim because Plaintiff had "allege[d] enough facts to state a plausible claim" by alleging existence of "express warranty" to which the defendant's goods did not conform)

3.        Intentional and negligent misrepresentation

To state a claim for intentional misrepresentation under Washington law, a plaintiff must allege with particularity facts supporting "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Kolbet v. Selene Fin. LP*, 2019 WL 2567352, at *5 (W.D. Wash. June 21, 2019) (citations omitted).  California law features similar elements.  *See Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014) ("The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage.").

The state a claim for negligent misrepresentation under Washington law, a plaintiff must allege that "(1) [the] defendant supplied false information for others' guidance, (2) the defendant knew or should have known the information was supplied to guide the recipient in his or her business transaction, (3) the defendant was negligent in obtaining or communicating the information, (4) the recipient relied on the information, (5) that reliance was justified, and (6) the false information proximately caused the plaintiff's damages." *Gurguis v. U.S. Bank Nat'l Ass'n*

---

[14] Notwithstanding the foregoing, it could be that a breach of warranty claim may impermissibly duplicate a breach of contract claim. *See, e.g.*, *Hall v. Fiat Chrysler Am. US LLC*, 2022 WL 17885693, at *3 (C.D. Cal. Oct. 24, 2022) (dismissing breach of warranty claim because the plaintiff "failed to otherwise enumerate a meaningful difference between" it and the breach of contract claim).

ORDER - 22

*as Tr. for GSR Mortg. Loan Tr. 2006-4F Mortg. Pass-Through Certificate Series 2006-4F*, 2021 WL 1720925, at *1 (W.D. Wash. Apr. 30, 2021) (citing *ECSA v. KPMG Peat Marwick*, 135 Wash. 2d 820, 826–27, 959 P.2d 651 (1988)).  The standard is similar in California.  *Cisco Sys.*, 77 F. Supp. 3d at 897 ("The essential elements of a claim for negligent misrepresentation are the same as for intentional misrepresentations, except that it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true.").

As with Plaintiff's breach of express warranty claim, Defendant makes two arguments for dismissal: that the independent duty and economic loss doctrines preclude Plaintiff's claim for misrepresentations (Dkt. # 6 at 30–31), and that Plaintiff has not pleaded that Defendant made any real misrepresentations (*id.* at 26–28).

      a.      Independent duty and economic loss doctrines

The standards related to Washington's independent duty doctrine and California's economic loss doctrine are set out above.  Defendant contends that Plaintiff points to no independent duty that Defendant violated when it allegedly charged Plaintiff for shipping the couch despite representing on their website that the couch shipped for free.  Dkt. # 6 at 30–31. Defendant also argues that "the mere 'assertion that a duty [] existed outside the contract' is not enough; a plaintiff must plead facts showing such a duty." *Id.* (citation modified).  Thus, Defendant argues, neither of the misrepresentation claims can proceed.  Plaintiff responds that the independent duty and economic loss doctrines do not bar intentional or negligent misrepresentations, and that Plaintiff pleaded that Defendant had an independent duty that it violated.  Dkt. # 22 at 24–25 (citing Dkt. # 1 ¶¶ 36, 132–38, 141–47).

ORDER - 23

The Court notes again that perhaps, under Washington law, the independent duty doctrine categorically does not apply to factual settings outside the real estate context. But as discussed below, the Court also agrees with Plaintiff that it does not apply for other reasons.

Plaintiff is correct that under both Washington and California law, the doctrines do not bar intentional tort claims. *See Jackowski v. Borchelt*, 174 Wash. 2d 720, 738, 278 P.3d 1100 (2012) (en banc) ("[b]ecause the duty to not commit fraud is independent of the contract, the independent duty doctrine permits a party to pursue a fraud claim regardless of whether a contract exists.") (citing *Eastwood*, 170 Wash. 2d at 390); *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 38, 553 P.3d 1213 (2024) ("the economic loss rule does not apply to limit recovery for intentional tort claims like fraud," but "only applies to bar tort recovery for negligently inflicted economic losses unaccompanied by physical or property damage" subject to certain limitations). The same is true under Washington law for negligent misrepresentation claims. *See Jackowski*, 174 Wash. 3d at 738 (independent duty doctrine does not apply to a "claim of negligent misrepresentation, but only to the extent the duty to not commit negligent misrepresentation is independent of the contract."). And the Ninth Circuit has suggested that under California law, the economic loss doctrine does not bar a negligent misrepresentation claim. *See Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008) ("negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable") (citation omitted).

The issue is thus whether Plaintiff has pleaded that Defendant had an independent duty outside the contract that could support her misrepresentation claims. In conducting this analysis, courts tend to compare the allegations in the complaint. *See, e.g.*, *Bellevue Med., LLC v. Total Wound Care of Oklahoma, LLC*, 2025 WL 2052640, at *5 (W.D. Wash. July 22, 2025) (comparing the pleaded breach of contract and negligence claims side-by-side and concluding

that "[b]ecause the negligence claim merely restates the contractual obligations, it is barred by the independent duty doctrine") (citation omitted).

The pertinent allegations in the complaint (Dkt. # 1) are presented in the following table:

| Breach of contract allegations | Negligent misrepresentation allegations | Intentional misrepresentation allegations |
| --- | --- | --- |
| ¶ 55: "The contracts further required that Costco ship the purchased Products to Plaintiff and putative class members for free, i.e., that it would not charge Plaintiff and putative class members to ship Products to them."<br>¶ 56: "The promise of free shipping was a specific and material term of each contract, and was displayed to Plaintiff and class members at the time they placed their orders." | ¶ 132: "As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Subclass members concerning the existence and/or nature of free shipping advertised on its website."<br>¶ 138: Plaintiff and putative class "would not have purchased Costco Products if they had known that they had to pay for shipping and/or [] they would have paid less for the Products." | ¶ 141: "As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Subclass members concerning the existence and/or nature of free shipping advertised on its website."<br>¶ 147: Plaintiff and putative class "would not have purchased Costco Products if they had known that they had to pay for shipping and/or [] they would have paid less for the Products." |
| ¶ 58: "Costco breached the contracts with Plaintiff and class members by failing to provide free shipping. Costco did not ship the Products for free as promised. It bundled the cost of shipping into the cost of the Product." | ¶ 133: "These representations were false."<br>¶ 134: "When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made." | ¶ 142: "These representations were false."<br>¶ 143: "When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations." |
| ¶ 59: "As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial (including | ¶ 137: "Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Subclass members." | ¶ 146: "Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Subclass members." |

| the costs they were wrongfully charged for shipping)." | | |
|---|---|---|

The table above shows that Plaintiff's misrepresentation allegations are distinct from its breach of contract allegations, though at least on the surface they do not identify the independent source of Defendant's duty not to commit the misrepresentation. What the complaint essentially alleges is that, through a misrepresentation, Defendant induced Plaintiff into forming a contract with it, that is, by purchasing the couch on the false promise of free shipping. *See, e.g.*, Dkt. # 1 ¶ 36 (Plaintiff "would not have made the online purchase if she had known that she was paying for shipping or that Defendant charged more for the product online"); *id.* ¶ 28 ("Defendant's advertisements harm consumers by *inducing them to make purchases* they otherwise would not have made, based on false information.") (emphasis added); *id.* ¶¶ 80, 91, 104, 123, 138, 147 (Plaintiff and the putative class "would not have purchased Costco Products if they had known that they had to pay for shipping"). At least one other court in this Circuit has concluded that similar allegations amount to fraudulent inducement into a contract, precluding application of the independent duty or economic loss doctrines. *See Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*, 753 F. Supp. 3d 966, 981–82 (C.D. Cal. 2024) ("To the extent that [the defendant] is alleged to have made negligent representations to 'induce' [the plaintiff] to enter a contract with [the defendant,] 'the negligent misrepresentation claim is really alleging that [the plaintiff] was fraudulently induced to contract,' and the economic loss doctrine does not apply.") (citing *Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*, 2023 WL 5506021, at *4 (C.D. Cal. July 6, 2023)).

    b.    Merits

Defendant argues that Plaintiff knew or should have known that Defendant was charging for shipping. *See, e.g.*, Dkt. # 1 ¶¶ 133, 134 (with respect to negligent misrepresentation claim);

ORDER - 26

*id.* ¶¶ 142, 143 (with respect to intentional misrepresentation claim). While Defendant asserts that Plaintiff's belief is not "plausible" in light of its "accurate" representations about the price differences between the online listings and warehouse stock, Dkt. # 6 at 28, as described above, the central allegation is that Defendant's online representations were not accurate. And as Plaintiff points out, "intent . . . may be alleged generally." Fed. R. Civ. P. 9(b).

4.      Quasi-contract and unjust enrichment

Last, Defendant contends that Plaintiff fails to state an unjust enrichment claim. Dkt. # 6 at 31–32. "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wash. 2d 477, 484 191 P.3d 1258 (Wash. 2008).[15]

Defendant makes two arguments: first, that Plaintiff fails to allege facts supporting this theory; and second, that unjust enrichment claims can proceed only "absent any contractual relationship." Dkt. # 6 at 31–32 (citing *Young*, 164 Wash. 2d at 484). Defendant also asserts that an unjust enrichment claim cannot be pleaded in the alternative to a breach of contract claim. *Id.* at 32 (citing *Wodja v. Wash. State Emps. Credit Union*, 2016 WL 3218832, at *4 (W.D. Wash. June 9, 2016)). Plaintiff responds that she pleads facts supporting unjust enrichment and that she may plead an unjust enrichment claim in the alternative. Dkt. # 22 at 26 (collecting cases).

Defendant's first argument fails because Plaintiff alleges that Defendant represented that Plaintiff would not pay for shipping but then charged her for it. *See* Dkt. # 1 ¶¶ 126–27. To Defendant's second argument, while plaintiffs asserting breach of contract claims can plead

---

[15] "In California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution." *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1120 (N.D. Cal. Sept. 7, 2022) (citation modified).

ORDER - 27

unjust enrichment claims in the alternative, they may only do so where "the validity of the contract remains in dispute." *Scott v. Carr*, 2020 WL 6381812, at *4 (W.D. Wash. Oct. 30, 2020) (citing *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1266–67 (W.D. Wash. 2009)). Defendant says on reply that it "has not disputed *for purposes of its motion* to dismiss the existence of a contract, only whether it included a term for free delivery" that was allegedly breached. Dkt. # 23 at 14 (emphasis added). The Court notes that this falls short of a formal admission of a valid contract, and the italicized portion suggests that Defendant may later attempt to dispute it. *See also* Dkt. # 6 at 29 (motion to dismiss saying that "'free shipping' was not a term of the *purported 'contract'* for the couch") (emphasis added). Defendant cites *Timaero Ireland Ltd. v. Boeing Co.*, but in that case, the defendant said on reply that "there is a valid express contract between" the parties. 2023 WL 3435309, at *6 (W.D. Wash. May 12, 2023). Defendant has not yet made that representation. Because the Court cannot yet conclude that "there is no plausible basis for the Court to find[] that a contract did not exist between the parties," *id.*, it is premature to dismiss Plaintiff's quasi-contract and unjust enrichment claim.

## IV

### CONCLUSION

For the reasons above, the Court DENIES the motion (Dkt. # 6).

Dated this 28th day of April, 2026.

John H. Chun
United States District Judge

ORDER - 28